<div style="float: right;">COLLINGS-<br>WORTH<br>v.<br>COVINGTON.</div>

dant. The answer denies that the plaintiff has any cause of action against the defendant, and alleges that the former was the overseer and manager of the defendant, and as such was responsible for the good conduct of the slave in question, who was under his charge. During the pendency of the suit the defendant died, and the cause was transferred to the Probate Court, where it was tried, without the intervention of a jury. A judgment was rendered against the plaintiff, from which he has appealed.

The evidence establishes fully that the plaintiff, while in the employment of defendant as an overseer, received from a slave belonging to the latter a painful and dangerous wound, which disabled him for some time, and subjected him to charges for medical treatment. It is further in proof, that the plaintiff was a good manager, attentive to the health, discipline, and good government, of the slaves under his charge, and exercised no unnecessary severity; that *Covington* had rendered his slaves unmanageable by over indulgence; and that the loose discipline which he maintained on his plantation, was a source of complaint and dissatisfaction among his neighbors. This evidence is uncontradicted, and the veracity of the witnesses, by whom it is given, unimpeached. The judge below has assigned no reason for rejecting the plaintiff's demand, but probably considered, as has been contended by the counsel for the defendant, that masters are not responsible for the damage caused by their slaves, in cases like the present.

In our opinion, the judge erred. Masters are expressly made answerable for the damage occasioned by the offences or quasi-offences committed by their slaves, but with the right reserved to them of liberating themselves from that responsibility, by abandoning the slave. No exception to this rule is established which precludes an overseer or other person, having a slave under his charge, from obtaining reparation in damages for injuries caused by the latter. Civil Code, arts. 180, 181, 2300. Articles 170 and 2299 refer, not to slaves, but to free servants, with regard to whom a different rule is established. By the latter of these articles, the responsibility of the master, resulting from the acts of the free servant, only attaches when he might have prevented the act which caused the damage, and has not done it. Justice, in our opinion, requires that the cause be remanded for the purpose of being submitted to a jury.

It is therefore ordered that the judgment of the District Court be avoided and reversed, and that the cause be remanded for further proceedings; the appellee paying the costs of this appeal.

---

## GASQUET et al. *v.* ROBINS.

Sheriffs were liable, before the stat. of 7 April, 1826, s. 17, to the party injured, for any damage sustained by their illegal acts or neglect. That statute gives an additional remedy in cases for which it provides; but it cannot be construed as subjecting the sheriff to the payment of the amount for which a *fi. fa.* was issued, as a penalty for a mere failure to return the writ on or before its return day. It provides a summary remedy, by motion, after ten days notice, in cases of failure to return writs of *fi. fa.* on or before the return day, or to pay over money received thereon to the party entitled to receive it, or to his attorney, unless good cause be shown for such failure, as the inability of the sheriff to effect a sale before the

return day, or that the writ had been enjoined, or payment of the sum collected suspended by order of a competent tribunal.

The return on a *fi. fa.*, made by a sheriff after the return day, that he had demanded of the debtors money to satisfy it, but that they refused to give either money or property, will not exonerate the officer from liability under the stat. of 7 April, 1826, s. 17. On the refusal of the debtor to satisfy the writ or to give up property, the sheriff should have called on the creditor to point out property. C. P. 726, 727. It is only where the debtor has made a surrender of his property, that this demand becomes unnecessary.

Where a sheriff, by whom a twelve-month's bond has been taken for the price of property sold under execution, neglects to return the writ, and retains the bond in his hands for more than eleven months, and until, in consequence of his failure to return it, it is destroyed, he will be liable to the creditor for its amount. The bond belonged to the creditor, who had a ight to require its delivery upon paying the costs; and the return of the writ would have nformed him that a bond had been taken. C. P. 716.

A sheriff condemned to pay to the creditor the amount of a *fi. fa.* in consequence of his neglect, is entitled to be subrogated to the rights of the latter against the defendant in execution.

APPEAL from the District Court of East Feliciana, *Johnson*, J. This suit was instituted to recover from a former sheriff the amounts for which certain executions were issued in favor of the plaintiffs, the sheriff having failed to return them on or before their return days. There was a verdict and judgment in favor of the plaintiffs for $4,793 06, from which the defendant has appealed. The material facts of this case will be found in the opinion of the court, *infra*.

*Winter* and *H. A. Bullard*, for the plaintiffs. The right to recover is given by the act of 7 April, 1826, sec. 17. The act of 1826 imposes, as a penalty for neglect to return the writs, the amounts specified in them. It does not merely give an action for damages actually sustained; that remedy existed before. The courts cannot mitigate the penalty, nor enquire what actual damages may have been suffered. The act is highly penal, but it is founded in public policy, and was called for by a great evil. The act of 1826 was passed subsequently to the promulgation of the Code of Practice, and was not repealed by the act of 1828, which abrogated only such rules of practice as existed prior to the adoption of the Code.

*Lawson*, for the appellant. The sheriff is the agent of the plaintiff. The loss sustained by a principal, in consequence of the negligence of the agent, is the measure of the latter's liability. 1 Livermore on Agency, 398-9. *Russell* v. *Palmer*, 2 Wilson, 325. *Purviance* v. *Angus*, 1 Dallas, 180. Story, Agency, ch. 3, § 164, 165, p. 177. Pothier, Oblig. nos. 159, 160. *Shepherd* v. *Johnson*, 2 East. 210. *Conard* v. *Nicoll*, 4 Peters, 291. 6 Peters, 282. 2 Wilson's Rep. 325. 3 Martin, 478. *Dupuy* v. *Barlow*, 4 Mart. N. S. 243. *Clarke* v. *Wright*, 5 Mart. N. S. 124. *Stinton* v. *Buisson*, 17 La. 571. *Bonnabel* v. *Bouligny*, 1 Rob. 294. *Union Bank* v. *Thompson*, 8 Rob. 227. Prior to the act of 1826, the law in reference to the returning of writs was held to be merely directory. See Code of Practice, art. 279. This court say that : " The provisions of the Code of Practice which require the judge to fix the amount of the bonds to be taken on a writ of sequestration, and the sheriff to return it into court, are directory only. They do not authorise a recourse on the sheriff, for neglects from which the plaintiffs receive no injury. See *Vawter* v. *Morgan*, 6 Martin's N. S. 46. The act of 1826 was repealed by the stat. of 25 March, 1828, s. 25. See *Jemison* v. *Wamack*, 5 La. 494.

The judgment of the court was pronounced by

KING, J. The plaintiffs in this action obtained three judgments against parties residing in the parish of East Feliciana, under each of which a writ of *fi. fa.* was issued and delivered to the defendant, then sheriff of that parish, who failed to return them within the prescribed delay. It is contended that, by reason of this omission, the defendant has rendered himself unconditionally liable for the amount of those judgments, which liability it is the object of this action to en-

force. The defendant denies that the plaintiffs have sustained any injury from his acts, and avers that the defendants in execution, against whom one of the writs was directed, were notoriously insolvent at the date of the writ; that under each of the other writs, a twelve-months' bond was taken, which bettered the condition of the plaintiffs. There was a judgment against the defendant, in the court below, from which he has appealed. After the appeal the defendant died, and his administrator has made himself a party to this proceeding.

It appears that under one of the writs in question there was no seizure made or money collected, and that it was not returned until after the expiration of the return day. It is admitted in the defendant's answer, that under each of the other writs, twelve-months' bonds were taken, on the 16th of April, 1838, both of which, it appears, were lost by a fire which destroyed the court house of the parish, in March, 1839, nearly a year after they were received. In neither of these cases, was the execution returned.

In 1841, the defendant, *Robins*, made the affidavit authorised by the special statute of the 20th March, 1840 (Sess. acts, p. 62, §4), that under the writ issued in the case of *Gasquet, Parish & Co.* v. *M. & E. Boatner*, property had been seized and sold, and a twelve-months' bond taken; that both the writ and bond had been destroyed by the fire of March, 1839; and that *M. Boatner*, one of the judgment debtors, was not a party to the proceedings under the execution; whereupon, a *fieri facias* was issued against *M. Boatner*, and a twelve-months' bond was taken for the amount of the judgment.

The section of the act of 1826, under which the defendant is sought to be rendered liable, is as follows:

" It shall be the duty of each of the sheriffs of the different parishes in this State, to return all writs directed to them, into the clerk's office from which they issued, on or before the return day mentioned therein, and also to pay over any moneys received thereon to the party entitled to the same, or to his attorney; and in default of any of the duties imposed on him in this section, he shall become liable to the party or parties entitled to the benefit of said writ, for the full amount specified therein, which shall be recovered, on motion, before the District Court, in the parish in which the said sheriff acts and resides, after ten days' notice having been given to said sheriff, of such intended motion. Bul. & Curry's Dig. p. 435.

The right to an action for damage actually sustained in consequence of the acts or negligence of the sheriff, existed before the enactment of this statute. The legislature, no doubt, intended to grant a remedy to plaintiffs in execution, in addition to that which previously existed. But considering that statute, in connexion with principles well recognized, both before and since its passage, in regard to the powers and duties of sheriffs, we cannot yield our assent to the position assumed by the counsel for the plaintiffs, that it is to be construed as imposing the amount specified in the writ as a penalty for the mere failure of the sheriff to make a return within the legal delay. Such an interpretation is inconsistent with the well settled jurisprudence of the State, both prior and subsequent to the act of 1826.

It has been repeatedly held, both before and since the date of that statute, that, if the sheriff levy upon property before the return day of the writ, he may sell after the expiration of that day. It is the duty of that officer, when he has

made a legal seizure, to complete what he has commenced; and until a sale is effected, or the writ has been otherwise satisfied, he can make no return, without the consent of the plaintiff, which would release the property from the seizure. Any act of the sheriff, after a legal levy, prejudicial to the rights which the creditor acquires in virtue of his seizure, would render that officer liable for all losses resulting from his act. Such being the duties of the sheriff, how can he be answerable, unconditionally, for the mere failure to return a writ, which, under certain circumstances, he may be bound to hold or to execute. 3 Mart. N. S. 496. 1 Rob. 540. 12 Ib. 12.

The object of the statute appears to have been, to remedy the evil of a failure or refusal of the sheriff to execute writs of *fieri facias*, or to return those which had been executed, or to pay over the sums made under execution. In such cases, a summary remedy is given against the sheriff, who, after ten days notice, may, upon motion, be made liable, unless he can show good cause why no return has been made, or why money collected under the writ has not been paid. The sheriff may, in answer to such notice and motion, show that, in the exercise of due diligence, he has made a levy, but has been unable to effect a sale; that the writ has been enjoined; or that the payment of a sum collected has been suspended by an order of a competent tribunal; and this showing would excuse his failure to make the return within the prescribed delay, and exonerate him from liability. We consider that the defendant has shown circumstances, which discharge him from responsibility under one of the writs. In regard to the other two, his conduct is without excuse, and he must be held answerable to the plaintiffs.

On the writ issued in the case of *Gasquet, Parish & Co. v. Ripley & Thorn*, which was returnable on the third monday of February, 1838, the following return was made: "Received this *fi. fa.* December 28th, 1837. This day, January 2d, 1838, I demanded of the defendants in this *fi. fa.* the money to satisfy it. They paid no money, and refused to give me property to satisfy it. This *fi. fa.* having expired, I return it, no money made. March 1st, 1838.
(Signed) THOS. J. ROBINS, Sheriff."
" Returned and filed, March 18th, 1838. T. HARDESTY, Clerk,"

It is clear, from this return, which was made sometime after the expiration of the writ, that the sheriff failed to perform his duty, which was, upon the refusal of the debtor to give up property to satisfy the writ, to call on the creditor to point out property. Code of Pract. arts. 726, 727. 4 La. 301. The alleged insolvency of the defendants in execution, did not excuse him from making this call. They had made no surrender, and the creditor might have been able to designate property to be levied upon.

On the execution which issued under the judgment against *Boatner*, no return was made. A bond was, no doubt, taken; but it was retained by the sheriff for more than eleven months, and until, in consequence of his neglect, it was destroyed. It belonged to the judgment creditor, who could have required its delivery to him upon paying the costs, and the return of the writ would have informed him that the bond was taken. C. P. art. 716. The loss of the bond is imputable to the *laches* of the sheriff, for which he is answerable.

Under the judgment against *M. & E. Boatner*, the plaintiffs availed themselves of the benefit of the statute of 1840, already referred to, and issued a new execution, under which, a twelve-months' bond for the whole amount of

<div style="text-align: right">GASQUET<br>v.<br>ROBINS.</div>

their judgment, was taken. This was an approval of the defendant's act in relation to this writ, and a waiver of recourse against him. The amount of this bond, which is $3,474 78, must be deducted from the judgment rendered by the court below.

The defendant asks, in the event of a judgment being rendered against him, to be subrogated to the rights of the plaintiffs, and this he is entitled to claim.

It is therefore ordered, that the judgment of the District Court be avoided and reversed. It is further ordered that, the plaintiffs recover from the succession of *Thomas J. Robins*, deceased, the sum of $1,318 28, and that, upon the payment of that sum, the plaintiffs subrogate the said succession to all their rights resulting from their judgments against *Ripley & Thorn*, and against *Elias Boatner*, numbered 998 and 1032, on the docket of the District Court of East Feliciana: the appellees paying the costs of this appeal, and the appellant those of the court below.