WILLIAM D. SEYMOUR CO., INC., v. CASTELL ET AL.

(January 27, 1930.  Opinion and Decree.)
(March 10, 1930.  Rehearing Refused.)
(May 5, 1930.  Writ of Certiorari and Review Refused by Supreme Court.)

McCloskey & Benedict, of New Orleans, attorneys for H. H. Converse, plaintiff, appellee.

Monroe & Lemann and Walter J. Suthon, Jr., of New Orleans, attorneys for defendants, appellants.

HIGGINS, J. This matter comes before the court on a rule which the plaintiff took against the surety on a suspensive appeal bond to show cause why the surety should not pay the amount of the judgment. There was judgment in favor of the plaintiff making the rule absolute against the surety, from which the surety prosecutes this appeal.

The record shows that the plaintiff sued William J. Castell and William H. Cowley, as solidary obligors on notes aggregating the sum of $1,872.30. A judgment by default was taken against Castell, who failed to make any defense. Cowley defended the suit on various grounds, but the Supreme Court affirmed the judgment of the district court against him for principal and interest, but rejected the attorney's fees allowed the plaintiff by the judge a quo. See Seymour & Co. vs. Castell et al., 160 La. 371, 107 So. 143.

The Globe Indemnity Company, as surety, now defendant in rule in this proceeding, furnished Cowley with the suspensive appeal bond in the sum of $3,500. The present litigation is to enforce payment of the judgment against the surety on this bond.

When the judgment of the Supreme Court became final, the plaintiff sold, assigned, and transferred its rights under the judgment against Castell and Cowley to one H. H. Converse, plaintiff in rule herein, who was recognized as the assignee and transferee of the plaintiff's judgments by appropriate orders of court dated February 10, 1926.

Thereafter the substituted plaintiff made some efforts to collect the judgment against Cowley by execution and garnishment, which were followed by a rule against the surety on the appeal bond, filed March 17, 1927. On March 24, 1927, after argument on the rule, but before the court passed upon it, the plaintiff in rule discontinued it without prejudice. Further efforts to collect the judgment by execution and garnishment process followed, and a second rule against the surety on the appeal bond was filed on March 27, 1928. On July 19, 1928, this rule was discontinued without prejudice. A third rule was filed against the surety and tried on July 27, 1928, resulting in a judgment against the surety for the amount of the original judgment in principal, interest, and costs, subject to certain credits aggregating about $750. The credits resulted from a collection on the judgment by garnishment process against the Canal Bank, amounting to $96.89, an

allowance to Cowley of the costs of appeal in the original suit where the attorney's fee was rejected, and a realization of $636.-65 from a seizure under execution of certain real estate belonging to Cowley. This real estate was heavily incumbered, and upon the payment of this amount the seizure was released in this respect, with the approval and consent of the surety on the appeal bond.

In its return to the rule dictated in the record, the surety asks the court to dismiss the rule on two grounds, to-wit: First, the record shows that, under the executions issued against Cowley, a bank box belonging to him in the possession of the Canal Bank was seized, and this seizure was released when the writs were returned under instructions from the attorney for the plaintiff in rule to return the writ nulla bona; second, the record shows that the original plaintiff in this case held, as security for the notes of Castell and Cowley, 1,500 shares of stock in the Castell Land & Harbor Company, and no effort has been made to execute the judgment by seizing this stock. The surety contends that it is not bound to pay under its suspensive appeal bond, until all of the property, both real and personal, of the judgment debtor, is first exhausted.

We will now discuss these defenses in the above order. It appears that the bank box was seized three times, and on each occasion the civil sheriff was permitted to release the seizure without realizing anything of value therefrom. The reason why the bank box was released twice was because of some alleged irregularity in the execution of the fi. fa. or the return. But, in the rule filed against the surety on March 17, 1927, it is alleged that the fi. fa. was returned nulla bona, although the original fi. fa. is not in the record. However,

there is a duplicate bearing the notation that due return was made on the original. On the second fi. fa., the Canal Bank answered the garnishment that it had in its custody a safety deposit box belonging to Cowley, but nothing further appears to have been done, and the return was made nulla bona on May 26, 1927. A third fi. fa. was issued on June 6, 1927, under which the cash credit of $96.89 was realized from garnishment process, and $636.65 from the seizure of the real estate, hereinabove explained. The contents of Cowley's bank box at the Canal Bank was seized, and the bank was directed to deliver it to the sheriff, and the sheriff authorized to take possession of it, but nothing is shown in the return to the original writ, or the supplemental return to the writ, as to what was done or attempted to be done under the order of court, or as to what became of the contents of this bank box.

On the trial of the rule, counsel for plaintiff in rule took the stand in order to explain the release, with the consent of the surety, of the real estate seized under the writ of fi. fa. by the sheriff. Counsel for the surety company was present in court and made no effort to cross-examine or have the witness explain what the bank box contained, if anything. Cowley was also produced as a witness by defendant in rule, and testified, but was never asked what the bank box contained. It would seem to us that a very strong presumption that the bank box contained nothing of value would arise, as the very purpose of the seizure was to obtain something of value in order to satisfy the judgment. The record convinces us that the plaintiff in rule has made every reasonable and serious effort to find something of value the defendant Cowley owned, in order to execute the judgment, before proceeding against the surety. The record shows that the surety

company itself was called upon to point out anything of value that Cowley might own in order that the sheriff might seize it. but the surety company was unable, or failed to do so. The surety has not shown that it suffered any loss or damage as a result of the release of the bank box, and we feel quite certain that, if there had been anything of value in the bank box, neither the plaintiff in rule nor the sheriff would have ever released it. The surety company had a full opportunity to ascertain from Cowley, the sheriff, and plaintiff in rule at the trial of the rule, if anything of value was contained in the bank box and failed to do so. As we feel confident that there was nothing of value contained in the bank box, we do not even deem it necessary to remand the case for further evidence on this point.

We next pass to a consideration of the second defense.

The evidence shows that William D. Seymour Company, Inc., loaned some money to William J. Castell, and that the notes evidencing same were secured by 1,500 shares of stock of the Castell Land & Harbor Company. These original notes were indorsed by William H. Cowley as an accommodation indorser. When the notes fell due, Cowley requested Seymour Company, Inc., to renew the loan for the balance, which it did, but the stock was not pledged as collateral security for the new notes, and, instead of Cowley signing as an accommodation indorser, he signed the notes as a joint maker. The stock was retained by Seymour Company, Inc., but appears to have been returned to Castell after this suit was filed, as the stock at that time was of no value. The stock is not mentioned in the judgments. It must be borne in mind that the stock was not pledged as collateral security on the new notes, which

formed the basis of the present suit, and therefore Seymour Company, Inc., had the right to return this stock to Castell.

We are convinced that the stock was not transferred by the original plaintiff to the plaintiff in rule at the time of the assignment, as nothing is said in the assignment concerning the stock. At the time of the trial of the rule, Cowley, who was offered as a witness by defendant in rule, testified that the stock belonged to Castell and not to himself, and that its value was "problematical." William D. Seymour, of Seymour Company, Inc., the original plaintiff, testified that he did not remember what became of the stock, but was of the impression that it had been returned to Castell, whom he believed owned it. We feel sure that, if the stock had had any value, Seymour Company, Inc., as it retained possession of the stock after having obtained judgment, would have certainly seized it in order to satisfy the judgment. We also feel certain that the substituted plaintiff would likewise have seized the stock, if valuable or available, in order to satisfy the judgment as far as possible. Notwithstanding the fact that William D. Seymour and Cowley were witnesses in the trial of the rule, the surety made no attempt to show that it suffered any loss or damage as a result of the stock not being seized, or that it had any value.

Under the circumstances, we do not feel that it can be said that the plaintiff in rule has not seized all of the personal and real property of the judgment debtors. The record shows that diligent and persistent effort to seize anything of value belonging to the judgment debtors was made by the plaintiff in rule, and, having exhausted all means of securing anything further of value from the judgment debtors, he is now entitled to have the surety on the appeal

bond pay the balance due under the judgment.

Counsel for the surety company has submitted numerous authorities to the effect that the surety is not bound to pay until all of the property, both personal and real, of the judgment debtor is first exhausted. This is unquestionably good law, but we fail to see where it helps the surety, because plaintiff in rule has exhausted all of the available personal and real property belonging to the judgment debtors before asking the surety to pay the judgment.

Furthermore, and in any event, the surety can only claim discharge or release to the extent of the injury proven.

In Provan vs. Percy et al., 11 La. Ann. 179, the Supreme Court said:

"The discharge of the surety, under Article 3030 (3061) of the Code, only takes place to the extent to which the acts of the creditor have prejudiced the recourse of the surety for reimbursement of what he may be obliged to pay under his contract of suretyship."

In Hill & Co. vs. Bourcier et al., 29 La. Ann. 844, we find the following:

"Jurisprudence has settled the law that the surety is not discharged by the mere omission of the creditor to sue the principal, or to enforce his privilege. If by the act of the creditor, or his willful neglect or want of proper diligence any of the securities, rights, mortgages, and privileges by which the debt was secured, are lost, so that they can no longer be made available, the surety is discharged to the extent of their value."

In Stewart vs. Lacoume, 30 La. Ann. 157, it was held:

"The surety on a forthcoming bond can only claim a release from his obligation, because the sheriff has made a return of the fi. fa. issued against the principal of the bond before the return day of the writ, by showing that he was injured thereby. And even then he can only claim a release to the extent of the injury proved."

We are of opinion that the judgment of the district court is correct, and it is therefore affirmed.

JANVIER, J., takes no part.