776 So.2d 557 (2000)
Virginia Gail EDWARDS, et al.
v.
Edward M. DAUGHERTY, Jr., et al.
No. 00-606.
Court of Appeal of Louisiana, Third Circuit.
December 6, 2000.
Rehearing Denied December 24, 2000.
*559 David Ross Frohn, Robin Alice Anderson, Frohn & Thibodeaux, Lake Charles, LA, Counsel for Defendants/Appellants Continental Casualty Company Sphere Drake Insurance, p.l.c.
Clayton Arthur Larsh Davis, Samuel Bryan Gabb, Lundy & Davis, Lake Charles, LA, Counsel for Plaintiffs/Appellees Virginia Gail Edwards, Eva J. Edwards, Jaymie D. Edwards, Jennifer Gail Edwards, Janet Denise Edwards, Jaymie Dell Edwards, II.
Reuvan Nathan Rougeau, Attorney at Law, Lake Charles, LA, Counsel for Plaintiffs/Appellees Eva J. Edwards, Jennifer Gail Edwards, Janet Denise Edwards, Jaymie Dell Edwards, II, Virginia Gail Edwards, Jaymie D. Edwards.
Michael Steven Beverung, Book & Beverung, Lake Charles, LA, Counsel for Defendant Wayne McElveen, Sheriff.
Marshall M. Redmon, Virginia Yoder Trainor, Phelps, Dunbar, Baton Rouge, LA, Counsel for Defendant Underwriters at Lloyd's of London.
Court composed of BILLIE COLOMBARO WOODARD, MICHAEL G. SULLIVAN, and GLENN B. GREMILLION, Judges.
SULLIVAN, Judge.
In these consolidated appeals, Sphere Drake Insurance, p.l.c., and Continental Casualty Company seek to reverse two judgments rendered by the trial court in favor of Plaintiffs, Virginia Gail Edwards, as natural and legal tutrix of her minor children, Jennifer Gail Edwards, Janet Denise Edwards and Jaymie Dell Edwards, II, and as co-curatrix with Eva J. Edwards of the interdict, Jaymie D. Edwards. For the following reasons, we reverse in part, affirm in part, and render.

Discussion
This appeal arises out of a judgment rendered against Edward M. Daugherty, Jr., Wayne McKlveen, Sheriff of Calcasieu Parish, and his insurer, Sphere Drake. The judgment was in the amount of $3,378,168.00, plus costs; it assigned sixty-two and one-half percent of the fault to Daugherty and thirty-seven and one-half percent to the Sheriff. The judgment cast Sphere Drake liable in solido with the Sheriff "subject to the terms of its policy." Sphere Drake and the Sheriff suspensively appealed the trial court's judgment. Sphere Drake was ordered to post an appeal bond in the amount of $960,981.21.[1] Continental was the surety on Sphere Drake's appeal bond.
On appeal, the damage awards were affirmed, but fault was reassessed fifty-five percent to the Sheriff and forty-five percent to Daugherty; the Louisiana Supreme Court denied writs. Edwards v. Daugherty, 97-1542 (La.App. 3 Cir. 3/10/99); 729 So.2d 1112, writs denied, 99-1393, 99-1434 (La.9/17/99); 747 So.2d 1105. After the judgment became final, Sphere Drake deposited the sum of $334,000.00 into the registry of the trial court alleging that, because of payments for defense costs and payments to other claimants in accordance with the terms of the policy, this was the full amount it was obligated to pay Plaintiffs.
Plaintiffs withdrew the funds from the registry of the court and began efforts to collect additional funds from Sphere Drake. They filed a judgment debtor rule against Sphere Drake. In response to interrogatories by Plaintiffs, it appears that Sphere Drake submitted an affidavit regarding assets located in the State of Louisiana.[2] Plaintiffs then seized the only asset *560 identified by Sphere Drake, a bank account which had a balance of approximately $3,200.00. On May 9, 2000, because of Sphere Drake's position that it had paid all of the money owed under the terms of its policy, Plaintiffs obtained a judgment in the trial court which set forth Sphere Drake's liability as $1 million, plus judicial interest from April 12, 1994, less any payments previously made by Sphere Drake. They also obtained a judgment ordering Continental to pay them the full amount of its appeal bond. On the same day, the trial court denied a motion filed by Sphere Drake seeking a declaration that its obligations under the judgment had been satisfied.
The policy issued by Sphere Drake was an excess law enforcement liability insurance policy issued in favor of Participants of Louisiana Sheriffs Risk Management Program (LRSMP). It provided $1 million liability coverage per claim with the $1 million coverage being an aggregate for each sheriff's department and $2 million liability coverage in the aggregate for all of the member sheriffs' departments. Under the policy, Sphere Drake's liability was excess of an $850,000.00 self-insured retention fund maintained by the LRSMP, which in turn was excess of a $100,000.00 per claim per sheriff/$300,000.00 aggregate per sheriffs department self-insurance. At the time of trial, all underlying insurance was exhausted.
Certain Underwriters at Lloyd's, London (Lloyd's) issued another excess policy which provided coverage in favor of the LSRMP. Pursuant to the terms of its policy and the judgment, Lloyd's paid $1 million to Plaintiffs. After the May 9, 2000 judgments, Lloyd's also reimbursed Sphere Drake the amount of $307,805.40 for payments made by Sphere Drake on claims, other than Plaintiffs', after the date of Plaintiffs' judgment. Sphere Drake deposited that amount into the registry of the court and Plaintiffs withdrew the funds. Plaintiffs admit that they have been paid $645,009.08 by Sphere Drake toward satisfaction of their judgment.
Sphere Drake appeals the judgment of the trial court rendering it liable for $1 million, together with judicial interest thereon, on the basis that the trial court committed legal error in amending the judgment. Sphere Drake further contends that it has fully satisfied the judgment against it.
Continental appeals the judgment ordering it to pay the full amount of its bond, assigning three errors: 1) the trial court erred in entering judgment against it as surety without ever making any factual findings of the amount owed, if any, by Sphere Drake, the principal; 2) the trial court erred in entering judgment against it as surety without any evidence of efforts to collect the sums due from the principal; and 3) the trial court erred in entering judgment against it as surety when Sphere Drake had shown that its policy limits had already been paid.

Standard of Review
A trial court's findings of fact may not be reversed absent manifest error or unless it is clearly wrong. Stobart v. State of Louisiana, Through Dep't of Transp. and Dev., 617 So.2d 880 (La. 1993). Evaluations of credibility and reasonable inferences of fact should not be disturbed on review. When reviewing the trial court's findings of fact, the appellate court must review the entire record to determine whether the trial court's conclusion was a reasonable one. Id. If the trial court's findings are "reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id. at 882-83.
While factual determinations by the trier of fact are given great deference on appeal, if the trial court's decision was based on an erroneous application of law, which "interdicted the fact finding process," the manifest error standard of review *561 does not apply. Hebert v. Southwest La. Elec. Membership Corp., 95-405, p. 10 (La.App. 3 Cir. 12/27/95); 667 So.2d 1148, 1156, writs denied, sum nom, 96-277, 96-798 (La.5/17/96); 673 So.2d 607, 608. "When such an error of law has been made, the appellate court is to review the evidence de novo and apply the correct legal principles." Id.

Sphere Drake

Judgment for $1 Million
Article 1951 of the Code of Civil Procedure allows a trial court to amend a final judgment "(1) [t]o alter the phraseology, but not the substance; or (2)[t]o correct errors of calculation." The application of Article 1951 was reviewed in Alliance for Good Government, Inc. v. Jefferson Alliance for Good Government, Inc., 96-309, pp. 5-6 (La.App. 5 Cir. 10/16/96); 683 So.2d 836, 838-39:
[A] judgment may be amended by a trial court where the judgment takes nothing away from or adds nothing to the original judgment. Villaume v. Villaume, 363 So.2d 448 (La.1978); Hebert v. Melco Steel, Inc., 552 So.2d 1326 (La.App. 5 Cir.1989).
As a general rule, a final judgment is not subject to substantive amendment by the trial judge on his own motion or motion of any party. In such an event, the proper recourse is a timely application for new trial or a timely appeal. Villaume, supra; Hebert, supra. The district court may grant a limited or unlimited new trial, but until it does, it cannot modify its previous judgment as to substance. Hebert, supra.

In Hebert v. Hebert, 351 So.2d 1199 (La.1977), the Supreme Court rejected the idea that a written judgment could be amended to reflect oral statements by the trial court, stating:
A written judgment may be revised before it is signed thus eliminating many possibilities of error or misunderstanding. In the event a substantive error nevertheless creeps into the written judgment the aggrieved party has recourse to a timely application for a new trial or a timely appeal.
Article 1951 does not permit the trial court to substantively alter a final judgment even if the amendment merely expresses the trial court's actual intention, McLemore v. Fox, 609 So.2d 1209 (La. App. 3 Cir.1992), referring to Hebert, supra. Although an amendment may be permitted where the parties to the judgment agreed to the amendment[.] Villaume, supra.

Plaintiffs answered Sphere Drake's original appeal to this court, seeking to amend their judgment against Sphere Drake which defined Sphere Drake's liability as being "subject to its policy limits." They asked this court "to award them Sphere Drake's policy limits of One Million ( $1,000,000.00) Dollars." Edwards, 729 So.2d at 1140. The judgment was not amended, and Plaintiffs did not seek writs to the supreme court. Plaintiffs filed their motion to amend judgment on November 29, 1999.
Section II of Sphere Drake's policy details its "Limits of Liability":
1. The Limits of Liability shown in the Declarations and the Conditions below specify the maximum Underwriters will pay under the terms of this insurance regardless of the number of:
(a) Insureds;
(b) Claims made or suits brought;
(c) Persons or organizations making claims or bringing suits.
2. This insurance shall always be subject to the applicable Annual Aggregate Limit as provided for in Item 5 of the Declarations.
. . . .
4. All "Defense Costs and Expenses" paid by Underwriters shall be added to judgments and settlements paid by Underwriters to determine the *562 exhaustion of Underwriters applicable Limit of Liability.
5. Each payment made by Underwriters for damages because of injury or damage to which this insurance applies and for "Defense Costs and expenses" reduces, by the amount of such payment, the applicable Limit of Liability of this policy. Each such payment reduces, by the amount of such payment, the applicable Annual Aggregate Limit of this policy. The limits thus reduced will then be the "Amount of Insurance" available for further payments of claims or expenses.
. . . .
7. Subject to 5. above, the Limits of Liability stated as respects "any one person" and "any one incident" are the maximum Underwriters will pay for the sum of all damages because of injury or damage to which this insurance applies and all "Defense Costs and Expenses" because of all injury or damage arising out of any one claim or series of claims arising out of one Circumstance of [sic] Event.
Pursuant to the terms of the policy, the $1 million per claim limitation of the policy is reduced by payments on other claims and defense costs associated with those claims. Thus, the trial court's change in terminology from "subject to its policy limits" to "$1 million" was a substantive change to a final judgment which is prohibited by Article 1951. The amendment was substantive, therefore, the judgment of May 5, 2000, is annulled and the judgment of June 13, 1997, which defines Sphere Drake's liability as "subject to its policy limits," is reinstated. Alliance, 683 So.2d 836.

Sphere Drake's Policy Limits
Now, we must consider what the limits of the Sphere Drake policy are with regard to Plaintiffs. Plaintiffs introduced the policy into evidence at trial. As previously indicated, the policy is a $2 million aggregate policy under which the maximum any claimant will be paid is $1 million; the limit of liability, as to any one claim, is affected by the payment of other claims and defense costs and expenses. We find Sphere Drake proved that its maximum liability to Plaintiffs is $1 million; however, its liability may be less than $1 million.
Sphere Drake claims its liability was reduced by payments for defense costs and expenses it paid in connection with this litigation. Plaintiffs argue that deduction of defense costs and expenses from the policy limits is against public policy, therefore, any payments for defense costs cannot be deducted from Sphere Drake's limits of liability. An insurance policy is a contract between the parties. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94); 634 So.2d 1180. General rules of interpretation apply when reviewing an insurance policy. Id. "Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written." Id. at 1183. Even so, a policy provision that is against public policy will not be enforced. Id.; see also Rivnor Properties v. Herbert O'Donnell, Inc., 92-1103 (La.App. 5 Cir. 1/12/94); 633 So.2d 735, writs denied, 94-1293, 94-1305 (La.9/2/94); 643 So.2d 147.
In Rivnor, which Sphere Drake cites in support of its position, a "defense costs within limits" policy provision like the one at issue here was found to be valid. However, the insurance policy in Rivnor was issued on behalf of an architect. The opinion noted that Regulation 41 of the Louisiana Department of Insurance "expressly approve[d] of `defense costs within limits' liability policies for architects." Id. at 755, n. 7. Regulation 41 provided that liability insurance policies for directors and officers, architects, engineers, and Certified Public Accountants which included "defense costs within limits" provisions would be "considered for approval" by the Commissioner. *563 (Emphasis added.) Thus, approval of such policy provisions was discretionary only with respect to four types of policies. Regulation 41 became effective July 20, 1993. The policy at issue was effective from September 1, 1993 until September 1, 1994.
Prior to the adoption of Regulation 41, Regulation 38 of the Department of Insurance only allowed "defense costs within limits" provisions in directors and officers liability policies and only under certain circumstances. Marketing a defense costs within limits policy without adhering to the requirements of Regulation 38 was a violation of the Unfair Trade Practices provision of the Louisiana Insurance Code.[3]
Sphere Drake claims that it is not subject to the regulations promulgated by the Department of Insurance because its policy was issued under "the excess and surplus lines statute." It does not cite the statute it relies upon for this statement. We have not found an "excess and surplus lines statute" in the insurance laws of this state; however, there is a section in the Insurance Code that governs "Unauthorized Insurance." See Part XXVII of the Insurance Code, La.R.S. 22:1248, et seq. Under Part XXVII, insurance coverage may be obtained from an unauthorized insurer if the coverage sought cannot be obtained from an authorized insurer. La. R.S. 22:1257. Such insurance is "surplus lines" coverage. Id. La.R.S. 22:1258 requires that surplus lines insurance contracts contain the following notice:
This insurance policy is delivered as a surplus line coverage under the Insurance Code of the State of Louisiana.
In the event of insolvency of the company issuing this contract, the policyholder or claimant is not covered by the Louisiana Insurance Guaranty Association which guarantees only specific policies issued by an insurance company authorized to do business in Louisiana.
Copies of Sphere Drake's policy of insurance in the record of the original appeal of this matter, and in this appeal, do not contain the notice required by La.R.S. 22:1258. Furthermore, Sphere Drake represents in its motion to quash judgment debtor rule filed on October 15, 1999, that it is a member of the Louisiana Insurance Guaranty Association (LIGA). A surplus lines insurer is not a member of LIGA. La.R.S. 22:1258. To be a member of LIGA, an insurer must be "licensed and authorized to transact insurance in this state." La.R.S. 22:1379(5)(a). Thus, a member of LIGA is subject to the insurance regulations of this state. La.R.S. 22:3. Sphere Drake has failed to establish that it is not subject to the regulations and the public policies of the Department of Insurance.
The policy to pay defense costs and expenses associated with the investigation and defense of a claim is a long-standing custom of the insurance industry. See Rule of Department of Insurance, Office of the Commissioner, repealing Regulations 38 and 41. The Department of Insurance disseminates information that it uses in the review of forms submitted for approval. "The information includes the criteria followed by the forms review staff to determine whether a filing complies with Louisiana law and public policy." Policy Form Review of the Louisiana Department of Insurance. The Review provides in part:
DEFENSE COSTS
AN INSURER MAY NOT INCLUDE "COST-OF-DEFENSE WITHIN THE LIMITS OF LIABILITY" IN LIABILITY POLICIES ISSUED IN LOUISIANA, EXCEPT FOR CERTAIN LIMITED MARKETS. INCLUDED IN THE LIMITED MARKETS ARE DIRECTORS AND OFFICERS *564 POLICIES, ARCHITECT, ENGINEERS, OR CPA PROFESSIONAL LIABILITY POLICIES AND EMPLOYMENT PRACTICE LIABILITY POLICIES. POLICIES PROVIDING COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE DO NOT FALL WITHIN THE EXCEPTIONS TO THE GENERAL RULE. THIS WOULD INCLUDE POLICIES SUCH AS MEDICAL MALPRACTICE OR ATTORNEY MALPRACTICE POLICIES. IT HAS BEEN THE LONG-STANDING POLICY OF THIS DEPARTMENT NOT TO APPROVE DEFENSE COSTS BEING SHIFTED FROM THE INSURER TO THE INSURED REGARDLESS OF HOW THEY ARE CATEGORIZED. REGULATION 41 WAS A LIMITED EXCEPTION TO THE GENERAL PROHIBITION OF SHIFTING DEFENSE COSTS TO THE INSURED. THE REPEAL OF THAT REGULATION DID NOT WORK AS A REPEAL OF THE GENERAL PROHIBITION.
(Emphasis added).
Sphere Drake points to an opinion issued by the Attorney General regarding "cost-of-defense within the limits of liability" policies as support for its position. See La. Atty. Gen. Op. No. 88-193A. At issue in the opinion were "highly sophisticated coverages such as directors and officers liability." The opinion concluded that discretion was to be used in situations where a "defense costs within limits" provision was sought to be included in more sophisticated types of business coverage. We note that Regulation 41 was adopted after La. Atty. Gen. Op. No. 88-193 A and enumerated only four types of insurance coverage for which the Department of Insurance would consider a defense costs within limits provision. We also note, as highlighted above, that it was viewed as a "a limited exception to the general prohibition of shifting defense costs to the insured." See Policy Form Review of the Department of Insurance.
The policy issued by Sphere Drake is not one of the types of policies enumerated in Regulation 41. Sphere Drake has failed to prove that it is exempt from the insurance regulations or the public policy of this state. We conclude that the "defense costs within limits" provision of the Sphere Drake policy was against public policy when it was issued to the LSRMP, and we will not apply it to this matter.
Next, we determine what, if any, other reductions claimed by Sphere Drake reduce its limits of liability. Both Plaintiffs and Sphere Drake contend that the burden of proof regarding any reductions of Sphere Drake's liability under the policy lies with the other party. When sued for benefits allegedly due under a policy issued by it, an insurer has the burden of proving facts which limit its liability. Ledet v. National Car Rental Sys., Inc., 96-1270 (La.App. 3 Cir. 6/4/97); 694 So.2d 1236; Ralston v. Connecticut Gen. Life Ins. Co., 617 So.2d 1379 (La.App. 3 Cir.), rev'd on other grounds, 625 So.2d 156 (La. 1993); Paret v. Louisiana Health Serv. & Indem. Co., 366 So.2d 634 (La.App. 3 Cir. 1978), writs denied, 369 So.2d 139 (La. 1979).
Having already concluded that the defense costs within limits provision of Sphere Drake's policy was against public policy, we now conclude that for purposes of determining its liability to Plaintiffs, Sphere Drake improperly deducted defense costs attributable to other claims paid/settled before trial in this matter. With no deductions for defense costs on previously paid/settled claims, we find Sphere Drake's liability to Plaintiffs to be $1 million.
At trial, Sphere Drake introduced the testimony of Luther Mount, an employee of Mor Tem, administrator of the LRSMP, to establish that its $1 million limit of liability per claim had been reduced. It was clear from Mr. Mount's testimony that he had personal knowledge of how the underlying self-insurance and deductible requirements of the policy worked, but that he had no personal knowledge of payments made by Sphere Drake which may have reduced its liability to Plaintiffs. He simply related information obtained from a Sphere Drake representative that *565 $750,000.00 remained available to satisfy an award in favor of Plaintiffs.
On December 21, 1999, Sphere Drake filed a motion for entry of satisfaction of judgment and attached an affidavit attested to by Ian Sawden, Vice President of Claims and Underwriting Support with Odyssey Re (Bermuda) Management Limited, formerly known as Sphere Drake Underwriting Management (Bermuda) Limited, as an exhibit. Mr. Sawden's affidavit included a list of all payments made by Sphere Drake under the LSRMP policy. The list of payments itemizes the date each payment was made, to whom it was made, the claim on which it was made, and the amount of the payment. It does not indicate what each payment represents, e.g., attorney fees, court costs, or settlement proceeds.
Sphere Drake contends that its limits of liability had been reduced to $750,000.00 at the time of trial. Our review of Mr. Sawden's affidavit indicates that two claims were paid and/or settled by Sphere Drake prior to trial. The affidavit itemizes five payments with regard to one of the claims and seven payments with regard to the other claim. With no indication of what each payment represents, we have had to surmise on our own the nature of each payment attributed by Sphere Drake to each of these claims. We conclude that amounts paid to Mor-Tem were paid to claimants and that amounts paid to persons who are known to be or believed to be attorneys or law firms, including defense counsel herein, represent defense costs. The only amounts paid to Mor-Tem were $82,966.41 and $886,544.69. The total of these two claims does not reduce the $2 million aggregate limit for all sheriffs to less than $1 million. Furthermore, neither payment reduces the $1 million per claim aggregate for the Sheriff of Calcasieu Parish. Accordingly, we find Sphere Drake is liable to Plaintiffs in the principal sum of $1 million.
The next issue regarding Sphere Drake's liability is legal interest. Sphere Drake argues that it is not obligated to pay interest on Plaintiffs' award because the payment of interest is included within the policy's definition of defense costs and expenses. It argues that its policy does not exclude the payment of interest; rather, it limits the payment of interest to its limits of liability, as defined by the policy.
La.R.S. 13:4203 provides "[l]egal interest shall attach from date of judicial demand, on all judgments, sounding in damages, `ex delicto', which may be rendered by any of the courts." The Department of Insurance's position on the issue of interest is also contained in the Policy Form Review of the Department of Insurance; it provides:
JUDICIAL INTEREST
As an insurer you are liable for judicial interest on any amount within your policy limits from the date of judicial demand. Any policy provision which attempts to limit the liability insurer's liability for legal interest from the date of judicial demand contravenes the public policy of LRS 13:1203[sic].
We have determined Sphere Drake's liability is $1 million. Pursuant to La.R.S. 13:4203, it is also liable for judicial interest thereon.

Continental Casualty

Principal's Obligation Must Be Fixed
Continental argues that Sphere Drake's liability has not been fixed. It cites La. Civ.Code art. 3069 as support for its argument. Article 3069 provides that judgment cannot be obtained against a surety until the creditor obtains a judgment fixing the obligation of the principal. The purpose of this statute is to insure that a surety does not have to defend a creditor's claims against the principal/debtor without the principal/debtor being a party to the litigation. See Comment (d) to Article 3069. The judgment against Sphere Drake established Plaintiffs' damages and its liability to Plaintiffs as insurer of the *566 Sheriff. It did not order Sphere Drake to pay a specific dollar amount because of the terms of its policy. This assignment is without merit.

Prematurity of Plaintiffs' Action Against Surety
Next, Continental contends that Plaintiffs' efforts to obtain payment from it as Sphere Drake's surety were premature because they did not prove that a writ of fieri facias issued by them against Sphere Drake was returned nulla bona as required by La.R.S. 13:4451.
Continental cites George v. Dupre, 499 So.2d 1157 (La.App. 5 Cir.1986), in support of its position that Plaintiffs are not entitled to a judgment against it until they have issued a writ of fieri facias and that writ is returned unsatisfied by the Sheriff. In George, the court stated:
These laws establish unequivocally that a nulla bona or insufficient property return of execution is a prerequisite to obtaining a decree against the surety; a surety on an appeal bond becomes liable only where it is shown that there is insufficient property of the debtor to satisfy execution. American Indemnity Company v. Robertson, 309 So.2d 737 (La.App. 4 Cir.1975). "This fact can be proved only by the return of the officer charged with the execution of the judgment showing a compliance with all the requirements of the law." Id. See Succession of Moody, 245 La. 429, 158 So.2d 601 (1963); LSA C.C.P. arts. 2291 and 2411 (execution of money judgments by writ of fieri facias).
There is nothing in the record to prove any official attempt by the appellants to execute their judgment against Dupre and Firemen's Fund, the principals on the appeal bond. Appellants stated in their brief that at the hearing on the motion to recover against the surety, one of their attorneys took the stand. He testified he had made efforts to determine the extent of Dupre's assets, discovering thereby that Dupre had "effectively dispossessed himself of all assets," and that "any issuance of a seizure by the court's office would be a vain and useless gesture because Mr. Dupre apparently has no assets."
A reviewing court cannot take cognizance of stated facts that are not in the record. Discon v. Saray, Inc., 262 La. 997, 265 So.2d 765 (La.1972). There is no transcript of this testimony in the record. Even if there were, however, this would not establish a prima facie case upon which plaintiffs could recover against the surety. The officers of the court are the persons charged with executing judgments and only an unexecuted return of a writ of fieri facias satisfies the requirements of R.S. 13:4451.
We refer again to American Indemnity Company v. Robertson, supra, in which the court pointed out that even a court rule to examine a judgment debtor under LSA C.C.P. art. 2451 is simply a discovery device or an aid in execution of a judgment; it does not itself constitute an execution of the judgment and therefore is not a sufficient condition precedent to a decree against a surety on an appeal bond. If an official judgment debtor rule is not sufficient, certainly informal attempts by the plaintiffs' attorney to ascertain the debtor's assets are insufficient.
Id. at 1159-60.
Here, Plaintiffs have only taken the steps taken by the plaintiff in the American Indemnity matter cited in George. While we do not relish requiring Plaintiffs to issue a writ of fieri facias, which we believe will be returned nulla bona, we are compelled to do so under the facts presented herein, by the law and the jurisprudence. Accordingly, we find that Plaintiffs' action for judgment against Continental was premature.
For reasons set forth hereinabove, Sphere Drake has not satisfied its obligation to Plaintiffs under the judgment. Accordingly, Continental's last assignment of error is without merit.
*567 Last, we consider Sphere Drake's motion to supplement the record on appeal and order that the judgment of the trial court, dated March 2, 2000, denying Sphere Drake's motion for entry of satisfaction of judgment and Plaintiffs' motion to increase amount of appeal bond filed March 3, 2000, be made part of this record.
The trial court's judgment of May 9, 2000, amending the language of the original judgment herein is reversed and the original judgment is reinstated. The trial court's judgment denying Sphere Drake's motion for satisfaction of judgment is affirmed. The trial court's judgment against Continental Casualty Company is reversed. Sphere Drake's liability to Plaintiffs is determined to be $1 million, together with judicial interest thereon from date of judicial demand.
Costs of this appeal are assessed one-half to Sphere Drake and one-half to Plaintiffs.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
NOTES
[1] Pursuant to La.R.S. 13:4581, the Sheriff did not have to post an appeal bond. See also, Rome v. Traylor, 620 So.2d 1163 (La.1993).
[2] However, the record only contains an unsigned draft of the affidavit.
[3] Regulations 38 and 41 were repealed effective October 20, 1997. Pursuant to the repeal of these regulations, the Department of Insurance "will consider for approval the use of certain contractual provisions which offset the cost of defense for limited classes of insureds, under specific types of coverage, and with minimum liability limits."